IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DARRYL D. THORPE,                )
                                 )
            Plaintiff,           )
                                 )
       v.                        )      1:19CV893
                                 )
ANDREW SAUL,                     )
Commissioner of Social Security, )
                                 )
            Defendant.           )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Darryl D. Thorpe ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on May 26, 2010, alleging a disability onset date of June 14, 2008. (Tr. at 136, 350-58.)[1] His claim was denied initially (Tr. at 119-20, 175-77), and that determination was upheld on reconsideration (Tr. at 121-32, 180-81). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 182-83.) Plaintiff and an impartial vocational expert testified at

---

[1] Transcript citations refer to the Administrative Record [Doc. #7].

the subsequent video hearing, at which Plaintiff appeared *pro se* on November 29, 2012. (Tr. at 136.) Following the hearing, ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 145.) However, on June 19, 2014, the Appeals Council remanded the case for a new hearing. (Tr. at 150-52.) Accordingly, Plaintiff, still appearing *pro se*, testified at a second administrative hearing on May 27, 2015. (Tr. at 156.) Following this hearing, the ALJ again concluded that Plaintiff was not disabled. (Tr. at 166.) On June 26, 2015, the Appeals Council remanded the case for a second time, noting that the second ALJ applied the wrong date last insured ("DLI") and failed to adjudicate Plaintiff's claims for the entire period at issue. (Tr. at 173.)

Plaintiff, represented by an attorney, appeared and testified at a third administrative hearing on April 17, 2018. (Tr. at 18.) The third ALJ, applying the correct DLI of September 30, 2015, determined that Plaintiff was not disabled within the meaning of the Act. (Tr. at 28.) On June 28, 2019, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the

2

correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

capacity ('RFC')." Id. at 179.³ Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had engaged in "substantial gainful activity" during the period from his alleged onset date of June 14, 2008 through his DLI of September 30, 2015. Specifically, Plaintiff had returned to his former work as an electrical helper from September 16, 2013 to May 1, 2014, at SGA levels for the fourth quarter of 2013 and the first quarter of 2014. (Tr. at 20, 472.) However, the ALJ further determined that

---

³ "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

Plaintiff had at least twelve consecutive months of no work and that Plaintiff therefore met his burden at step one of the sequential evaluation process. (Tr. at 20-21.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine, status post fusion in the remote past; and left eye blindness[.]

(Tr. at 21.) The ALJ next found at step three that none of Plaintiff's impairments, individually or in combination, met or equaled a disability listing. (Tr. at 21.) Therefore, the ALJ assessed Plaintiff's RFC and determined that, through his DLI, Plaintiff had the RFC to perform light work with the following, additional limitations:

> [Plaintiff] can stand and walk for six hours out of an eight-hour workday. He can sit for six hours out of an eight-hour workday. He can occasionally balance, stoop, crouch, kneel, crawl and climb ramps and stairs. He cannot climb ladders, ropes, or scaffolds. He can frequently reach overhead bilaterally. He should avoid even moderate exposure to hazards such as unprotected heights. He should not do work that requires exceptional depth perception or stereopsis.

(Tr. at 21.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff was unable to perform any of his past relevant work. (Tr. at 26.) However, at step five, the ALJ found that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy. (Tr. at 27-28.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 28.)

Plaintiff now contends that substantial evidence fails to support the ALJ's RFC assessment "for the period of May, 2014 through his date last insured." (Pl.'s Br. [Doc. #13] at 1.) Specifically, Plaintiff argues that the ALJ failed to properly consider "subjective complaints of pain as a basis for disability during that period . . . . despite his pain complaints

6

Case 1:19-cv-00893-NCT-JEP   Document 17   Filed 03/02/21   Page 6 of 15

being supported by medical evidence." (Pl.'s Br. at 1, 9.) Plaintiff does not challenge the ALJ's decision for the period through May 1, 2014, in light of his return to his past work for over seven months in 2013-2014, but Plaintiff nevertheless contends that the ALJ failed to properly consider his pain after May 1, 2014 through his DLI on September 30, 2015.

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, [such as pain,] be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. The ALJ should not reject a claimant's statements "about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [his] statements." 20 C.F.R. § 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017); see also Arakas v. Commissioner, 983 F.3d 83, 96-97 (4th Cir. 2020). However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [the] ability to

7

work" and "[a]lthough a claimant's allegations about . . . pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [ ]he suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also SSR 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . ."). According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities. . . .

SSR 16-3p.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered the medical evidence and other evidence of Plaintiff's impairments and limitations and explained that determination in the decision. Rather than explaining what, if any, additional functional limitations are required based on these records, Plaintiff simply asserts that evidence supports a finding of total disability under the Act. However, as Defendant correctly notes, whether the ALJ could have reached a different conclusion based on the evidence is irrelevant. The sole issue before the Court is whether

substantial evidence supports the ALJ's decision. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").

Here, the ALJ reviewed the medical evidence, the opinion evidence, Plaintiff's testimony, and the record, and explained his analysis of Plaintiff's subjective complaints:

> [This ALJ] has considered the claimant's subjective complaints with regard to pain, precipitating and aggravating factors, medications and other treatment, and any functional restrictions and claimant's daily activities (20 CFR 404.1529). The claimant's statements concerning his impairments and their impact on his ability to work are not entirely supported in light of the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the medical history, the findings made on examination, the claimant's assertions concerning his ability to work, and the reports of the reviewing, treating and examining physicians.
>
> The central issue is not whether the claimant has back and neck pain or left eye blindness, but whether the symptoms were so severe as to be disabling before the DLI. In the present case, it is emphasized that the claimant testified that his left eye blindness did not preclude him from working in the past. Moreover, the claimant reported doing electrical work at the SGA level in 2013 and 2014 and even having the ability to carry a 500-pound spool of wire despite alleging disabling back pain since 2008. In addition, the claimant received little to no regular treatment for his back between December 2011 and March 2014.
>
> The above factors detract from the consistency of the claimant's allegations concerning the severity of his symptoms. The foregoing evidence does indicate that the claimant had some abnormalities that were likely to impose some functional limitations. However, the undersigned concludes that these findings were not indicative of any intractable condition that would have precluded the claimant from performing a reduced range of light work activity for 12 consecutive months prior to the expiration of his date last insured. The claimant has a treatment history that fails to demonstrate a condition of the degree of severity alleged.

(Tr. at 25-26.) The ALJ thus included an extended analysis and specific reasoning regarding the evaluation of Plaintiff's symptoms, including the minimal treatment record over the seven

9

years at issue, the relatively benign findings on examinations, Plaintiff's ability to return to his prior work in 2013 and 2014, and the inconsistency with Plaintiff continuing to claim total disability since 2008 even while able to return to his prior work, including apparent heavy lifting.

In challenging this determination, Plaintiff's main assertion appears to be that his back pain worsened after an April 2014 injury, that the ALJ mischaracterized the medical evidence of Plaintiff's worsening back condition as "scant," and that his consistent reports of increased back pain, along with occasional positive straight leg raise results and findings on a February 2015 CT Urogram, are enough to mandate remand. (Pl.'s Br. at 10-13) (citing Tr. at 23). However, it is undisputed that Plaintiff claims to have been disabled since 2008, but he did not have any medical treatment from December 2011 to March 2014, and it is this lack of treatment for over two years that the ALJ specifically referred to as a "scant amount of treatment." (Tr. at 23.) In addition, it is undisputed that Plaintiff returned to his prior work from September 2013 to May 2014, which the ALJ found "undermines [Plaintiff's] allegations that he has been totally disabled since the June 2008 alleged onset date." (Tr. at 20-21.)

Moreover, with respect to the medical records and imaging after May 2014, the ALJ considered those medical records at length. As the ALJ's decision reflects, Plaintiff continued working for "two months after allegedly injuring his back" (Tr. at 20), and he waited four weeks after his April 2014 back injury to seek any medical treatment. (Tr. at 23.) At a visit in May 2014, Plaintiff reported the gradual onset of leg numbness since his accident, but his clinical findings were benign and lumbar x-ray results showed no compression fractures and with osteophytosis and slight narrowing of the disc space at L5-S1, mirroring Plaintiff's prior

10

2010 MRI reflecting degenerative disc disease, most severe at L5-S1. (Tr. at 23-24, 1060, 1066, 1069-70, 566.) As noted above, and as the ALJ discussed at length, Plaintiff was able to return to his prior work as an electrician's helper in 2013 and early 2014 despite the degenerative disc disease reflected in the 2010 MRI. (Tr. at 20-21, 23-24, 25-26, 566.)

In addition, as noted by the ALJ, Plaintiff was instructed in May 2014 to follow up and obtain an updated MRI, yet he failed to do so. (Tr. at 23-24, 1061.) Instead, Plaintiff did not seek care for another seven months, until December 2014, when he had an office visit at a community health center and complained of worsening back pain and numbness in his feet that he attributed to playing football in 1985. (Tr. at 795-96.) The ALJ noted that the treatment record for that visit reflects normal sensation on exam, and Plaintiff was referred for a "lumbar spine x-ray as well as an electromyography and nerve conduction study. . . . Again, however, there is no evidence the claimant followed up with these instructions." (Tr. at 24, 795-98.)

Two months later, in February 2015, Plaintiff presented with severe left flank pain and was diagnosed with kidney stones. (Tr. at 24, 1042-49.) In the course of his diagnosis, Plaintiff underwent a CT Urogram, which, along with urological findings, included imaging of his lumbar spine. The documented impressions from this testing included "long-standing disc disease at multiple levels including the lower thoracic region, L4-5 and L5-S1 where the most severe disc disease is present." (Tr. at 1030.) A "vacuum phenomenon" was also noted at L5-S1. (Tr. at 1030.) Plaintiff now contends, without explanation, that the presence of a vacuum phenomenon means that Plaintiff was disabled for the period from April 2014 to September 2015. (Pl.'s Br. at 12.) However, nothing in the treatment record reflects any such concern

11

by Plaintiff's treating physicians or by the providers reviewing the imaging, and there is no indication of concern or similar findings in Plaintiff's later treatment records even after September 2015.[4]

Plaintiff's second hearing was a few months later, on May 25, 2015, and at the hearing Plaintiff acknowledged that he took no medications, other than occasional Advil, to control his back pain. (Tr. at 79.) He also specifically acknowledged the dearth of recent medical records supportive of his subjective complaints. (Tr. at 82.) On June 11, 2015, two weeks after Plaintiff's second hearing and more than six months since his last treatment for back pain in December 2014, Plaintiff again sought treatment for low back pain. That treatment reflects that Plaintiff reported leg weakness, pain, and loss of function with "heavy lifting." (Tr. at 741.) Plaintiff testified that he had been "on a bridge working, and [he] slipped and fell." (Tr. at 22, 113.) As recounted in the ALJ's decision, "[t]he physical examination showed him to have spinal tenderness in the lumbosacral area, bilateral sacroiliac joint tenderness, and full range of motion of the hips with pain. [Plaintiff] also had 4/5 strength of the lower extremities and positive straight leg raising bilaterally. He was diagnosed with lumbosacral radiculopathy and recommended to follow up with a primary care physician." (Tr. at 24) (citing Tr. at 740-43).

---

[4] Plaintiff also contends that this imaging is consistent with Plaintiff's prior 2010 MRI, but the ALJ considered that 2010 MRI, and Plaintiff does not challenge the ALJ's analysis for the period prior to May 2014. In any event, as discussed above, the ALJ's analysis did not rely on a lack of objective evidence or imaging but rather on the nature of the treatment reflected in the record and the medical history, the findings made on examinations, reports of reviewing, treating, and examining physicians, and discrepancies between Plaintiff's claims and other evidence including his activities and his return to his prior work.

12

In September 2015, just before his DLI, Plaintiff presented to yet another new provider. Plaintiff exhibited low back tenderness and subjectively reported leg numbness and that he was "not able to lift or bend." (Tr. at 24) (citing Tr. at 747-48). The provider ordered new x-rays of Plaintiff's lumbar and cervical spine. (Tr. at 748.) Plaintiff was advised to "follow proper lifting and walking techniques," to exercise regularly, and to change positions frequently. (Tr. at 756.)

"Even after this date," as the ALJ noted, "the evidence does not support the existence of significant[ly] worsening back or neck pain. For example, in November 2015, . . . [a] physical examination showed tenderness to palpation along the low back, limited range of motion of the spine, and bilateral positive straight leg raise." (Tr. at 24) (citing Tr. at 789-94).[5] "In April 2016, however, the claimant once again exhibited normal range of motion of the spine, . . . normal range of motion of the lower extremities, and normal strength and tone of the bilateral upper and lower extremities." (Tr. at 24) (citing Tr. at 808-09). He was advised to avoid "heavy lifting" but otherwise to "[m]aintain normal activities" and exercise 30 minutes 5 times a week. (Tr. at 809.)

Throughout his hearings, Plaintiff asserted that he could no longer perform the heavy lifting required in the course of his previous work (Tr. at 43-44, 72-73, 112), and the ALJ agreed with this contention at step four of her analysis (Tr. at 26) (finding that Plaintiff could not perform his past medium and heavy exertional work). Plaintiff now contends that

---

[5] At that visit in November 2015, Plaintiff reported that he couldn't run or lift weights "like [he] used to." (Tr. at 790.) Similarly, at a visit a few weeks later, Plaintiff noted that he "can't lift any heavy objects" due to pain, and that his pain is aggravated by "[h]eavy lifting." (Tr. at 783.) He was again referred for an MRI. (Tr. at 787.)

increased pain from April 2014 forward also made it "impossible for him to perform work in the light work category." (Pl.'s Br. at 14.) As documented in the ALJ's decision, Plaintiff clearly experienced pain and radicular symptoms from his lumbar degenerative disc disease. However, the record contains little to no evidence of limitations precluding him performing the limited range of light work identified by the ALJ.[6] Moreover, the ALJ was entitled to rely on Plaintiff's sporadic and very conservative treatment history in discounting his reports of debilitating pain and leg numbness during the time period at issue. See Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").

In sum, based on the evidence before her, which included not only Plaintiff's pain complaints, but also a sparse and largely conservative treatment history during the time period at issue, the ALJ concluded that Plaintiff remained capable of a limited range of light work through September 30, 2015.[7] After a thorough review of the record, the Court finds no basis to disturb this conclusion. Plaintiff essentially asks the Court to reconsider and re-weigh the evidence presented. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted

---

[6] Although Plaintiff further testified both in 2015 and 2018 that he used a cane due to his back pain and leg numbness, even if such a limitation were included, the vocational testimony indicated that cane use would not preclude the jobs identified at step five of the sequential analysis, including the mail clerk position set out by the ALJ as a representative occupation. (Tr. at 81-82, 102-03, 109-10.)

[7] Plaintiff eventually had an updated lumbar MRI in February 2018, over two years after the end of the relevant period, reflecting multi-level degenerative disc disease with L4-L5 and L5-S1 disc bulge and with severe neuroforaminal narrowing (Tr. at 915-16), but this is similar to the 2010 MRI which reflected degenerative disc disease most pronounced at L5-S1. (Tr. at 565-66.) In any event, there is no indication of what may have changed in the 29 months between the end of the relevant period in September 2015 and the MRI in February 2018, nor is there any evidence of additional limitations beyond those included in the RFC.

14

above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Hancock, 667 F.3d at 472 (quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained her decision, explained the reasons for her determination, and that determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion for Judgment on the Pleadings should therefore be denied.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 2nd day of March, 2021.

                                              /s/ Joi Elizabeth Peake
                                              United States Magistrate Judge